HEIRS OF PEDRO CALDERÓN, Plaintiffs and Appellants, *v.* LUCIANO R. FUERTES ET AL., Defendants; and THE PEOPLE OF PUERTO RICO, Defendant and Appellee.

No. 7162. Argued February 2, 1938.—Decided July 30, 1938.

*H. Torres Solá* for appellants. *B. Fernández García, Attorney General, (R. Cordovés Arana, Assistant Attorney General,* on the brief) and *Pablo Defendini, Deputy Attorney General* for appellee. *Gabriel de la Haba* for defendants.

Mr. Justice Travieso delivered the opinion of the court.

Luciano R. Fuertes and his wife, defendants herein, executed a mortgage to secure the sum of $15,000 lent to them by Pedro G. Calderón. The mortgage was made to cover nine rural estates which included one called "Rosalía", of 69.64 acres (*cuerdas*), and another of 8 acres.

On March 18, 1932, those two estates were awarded to the People of Puerto Rico at a tax sale held in the office of the Collector of Internal Revenue of Naguabo, P. R., in a distress proceeding for the collection of property taxes upon the mortgaged estates and of income taxes amounting to $1,378.80 owed by Fuertes. The sale certificates of the two estates were recorded in the name of the People of Puerto Rico subject to the right of redemption in favor of the former owners.

The mortgage became due and Pedro G. Calderón, original mortgagee, having died, his heirs brought an ordinary action to recover the amount of the mortgage credit against Luciano R. Fuertes and his wife, Luisa de la Haba. The complaint contained, among others, the following prayers for relief:

(*a*) That the nine mortgaged estates be sold at public auction for the payment of the sums secured by the mortgage.

(*b*) That the People of Puerto Rico be summoned, in accordance with section 5 of Act No. 14 of August 24, 1933, "as the estates marked 1 and 2 described in paragraph 3 of this complaint had been awarded to it subsequent to the constitution and registration of the mortgage foreclosed by the plaintiff, for a sum that included income taxes and surcharges"; and that the cancellation be decreed of the records made in their registry in the name of the People of Puerto Rico as the purchaser of the said two estates at the tax sale held on March 18, 1932.

The People of Puerto Rico filed a demurrer to the complaint on the following five grounds:

1. Lack of jurisdiction of the lower court to take cognizance of the action in so far as The People of Puerto Rico was concerned, because the latter had not given its consent to be sued.

2. That there is another action pending between the same parties.

3. Misjoinder of causes of action.

4. Insufficiency of the facts alleged in the complaint to constitute a cause of action against the People of Puerto Rico.

5. That the complaint is ambiguous, unintelligible, and uncertain.

The Fuertes spouses as defendants appeared and consented to judgment against them, which was rendered on December 3, 1934. On the 10th of the same month the lower court rendered judgment sustaining the demurrer for lack of jurisdiction and dismissing the complaint as to the People of Puerto Rico, without special imposition of costs. The complainant heirs appealed and assigned as errors that the lower court had based its judgment on the fact that the estates had been awarded to the People of Puerto Rico before the enactment of Act No. 14 of August 24, 1933, *supra,* and that it had declared that the complaint could not be amended.

■ Our decision in the instant case must be based necessarily and exclusively on the matters contained in the record which the lower court had before it and which has been sent up to this court, but not on the allegations of new facts presented for the first time in the briefs submitted to this court.

Before taking up the jurisdictional question, we must carefully consider the allegations of the complaint filed by the appellants in order to determine whether the cause of action sought to be prosecuted against the People of Puerto Rico is one for which the latter has given its consent to be sued.

It is alleged by the plaintiffs that prior to the filing of the complaint two of the nine mortgaged estates had been sold at public auction for the collection of taxes and awarded to the People of Puerto Rico and recorded in its name, "both parcels being subject to the right of redemption." They further allege that the said parcels had been sold in order to collect property taxes and the sum of $1,378.80 as income taxes owed by the owners thereof.

It appears from the above allegations that at the time of the filing of the complaint the People of Puerto Rico owned by adjudication the two parcels of land. Its title was subject to reversion to the former owner as soon as he or the mortgagee paid the amount of the property taxes for which the sale and award had been made. Until such redemption takes place, the People of Puerto Rico is, and must be regarded as, the sole owner of the property awarded to it, without any liability at all on its part for any existing liens upon the estates, since the taxes upon a property for three years and for the current year constitute a lien in favor of the People of Puerto Rico having preference over any other charge or lien upon the same property. Section 1, Act No. 14 of August 24, 1933, *supra.* Therefore, as the People of Puerto Rico is not liable for any lien upon the property awarded to it, a mortgagee who desires to protect his mortgage and prevent the cancellation thereof at the expiration of the time for redemption, must necessarily redeem the property by paying into the public treasury the money for which the same was awarded, as a prerequisite to the prosecution of his action against the mortgage debtor. This fact is recognized by the statute when it provides that where a

mortgagee finds himself compelled to pay the taxes which the mortgagor failed to pay, or to redeem the property if the same has been sold for taxes, said mortgagee may add to his mortgage lien the redemption money paid by him and may recover the same with interest thereon at the same rate borne by the lien. Section 348 of the Political Code, section 3014, Comp. Stat. 1911.

So long as property sold for taxes and awarded to the People of Puerto Rico remains unredeemed and recorded in favor of the People, the latter holds the legal title thereto, free from liens, and the mortgagee has only the right of redemption, that is, an equitable title, empowering him to redeem the property within one year from the issuance of the certificate of purchase. It is expressly provided by the cited section 348 of the Political Code as follows:

" * * * and the property so released shall remain subject to all lines and legal claims against it, other than tax liens, to the same extent and in the same manner as though said property had not been sold for taxes . . . ."

The mortgage sought to be foreclosed by means of this action can not be foreclosed as against the People of Puerto Rico, because the latter had acquired the two estates by virtue of the execution of a lien having priority over the claim of the plaintiffs. The latter are barred from foreclosing the mortgage so long as the estates are not redeemed by payment of the amount for which they were sold. The complaint failed to allege that such redemption had taken place prior to the filing of the suit; on the contrary, it alleged that the estates were subject to the right of redemption. It is true that it has been alleged that the mortgagors applied for an extension of time for the payment of the land taxes; but there is no allegation that such extension had been granted.

■ The appellants base their alleged right to sue the People of Puerto Rico on the provisions of Act No. 14 of

August 24, 1933 (Session Laws (2), p. 76), which in its pertinent part reads as follows:

"Section 1.—With the exception of the taxes on the encumbered property for three years and for the current year, mortgage credits and crop loans are hereby declared to be liens having preference over any other charge or lien for taxes or for any other cause.

"  *       *       *       *       *       *       *

"Section 3.—It is hereby declared that this Act shall have, and has, a retroactive effect as regards charges and liens for taxes due, other than property taxes, and to which, in accordance with the provisions of laws prior thereto, there has been given the character of a preferred lien.

"  *       *       *       *       *       *   ,   *

"Section 5.—The taxes levied by the Income Tax Law of 1924 and the quotas for workmen's compensation, their penalties, surcharges and interest, shall be collected by the Treasurer of Puerto Rico through the same attachment proceedings as those established by law for the collection of property taxes, but the attachment made on real property and real rights shall have preference only from the date of its registration in the registry, and solely over liens and charges subsequent to said date. The registrar of property, on receiving the notice of the embargo, shall make a note thereof on the margin or at the foot of the registrations of the properties or real rights of the taxpayer. The Treasurer of Puerto Rico, by himself or through his employees, shall apply to the proper registry of property for the notation of the corresponding attachment on the real property or real rights appearing in favor of the debtor, as soon as such tax has been levied; *Provided*, That if The People of Puerto Rico is awarded, for the collection of this tax and the surcharges thereon, a property subject to a prior lien, the owner of such lien may execute it against the said property, making The People of Puerto Rico the party defendant in the proceedings followed, for which The People of Puerto Rico grants its consent."

Undoubtedly, if the sale and adjudication to the People of Puerto Rico executed on March 18, 1932, in connection with income taxes, had been made after Act No. 14 of 1933, *supra,* went into effect, the plaintiffs would be clearly and unquestionably entitled, under section 5, *supra,* to foreclose

their mortgage, by making the People of Puerto Rico a party defendant in the proceeding.

■ Did the lower court err in holding that Act No. 14 could not be applied retroactively, because it was not a case of "taxes due," but of taxes already paid by awarding the debtor's property at a sale made prior to the enactment of Act No. 14, *supra,* and pursuant to a former law? (Section 83, Income Tax Law of 1924, Sess. Laws of 1925, p. 546.)

We are of the opinion that the district court correctly construed the statute. The provision in section 5, *supra,* "That if the People of Puerto Rico is awarded, for the collection of this tax and the surcharges thereon, a property subject to a prior lien, the owner of such lien may execute it against the said property, making the People of Puerto Rico the (a) party defendant in the proceedings brought, for which the People of Puerto Rico grants its consent," is prospective, as indicated by the use of the expression "is awarded" instead of the phrase "has been awarded."

Section 3, *supra,* does not render the provisions of section 5 retroactively applicable to the case at bar, as it clearly provided that "this Act shall have, and has, a retroactive effect as regards charges and liens *for taxes due,* other than property taxes," that is, taxes due and unpaid at the time the Act went into effect, but not as regards income taxes which were collected one year and eight months prior to the going into effect of the Act which the appellants seek to apply retroactively.

For the foregoing reasons, we must hold that the lower court did not err in declaring that the People of Puerto Rico had not given its consent to be sued in such an action as the present one and therefore that it had no jurisdiction over such defendant.

The overruling of the first assignment carries with it that of the second assignment. The complaint could not be amended and the court did not err in entering judgment on the pleadings.

The judgment appealed from is affirmed.

Mr. Justice Wolf, dissented.

Mr. Justice De Jesús took no part in the decision of this case.